The attorneys who are going to orally argue, please step up and identify yourselves. For the appellant, Morning Judge Sam Scheles, S-H-E-L-I-S-T, for the appellant. I know it's morning for you, but it's afternoon for us. Good afternoon. Keely Hollison on behalf of the plaintiff's appellees. Appellee. Okay, you will have 10 and 5. Thank you. And you'll have 15. Okay, thank you. Okay. May it please the Court, one moment. The microphone that you're in front of is not an amplifier system. It's solely there for purposes of recording. So if you want everybody in the room to hear you, including us, please keep your voice up. I understand. Okay. May it please the Court, I represent the appellant. The issue in this rescission case involves a pretty clear set. You know, it's not really a rescission case. It's a vacated arbitration award, and that's sort of my problem with your position. Under the Uniform Arbitration Act, we have 90 days to seek to vacate an arbitration, and one of the grounds, Your Honor, is that there was no agreement to arbitrate. If the policy did not exist and were right, then there was no agreement to arbitrate, and therefore we have a right under the UAA to vacate the award. Agreed with all that. But having the right to rescind is different than having a basis for vacating an arbitration award. I agree, and I think under the Uniform Arbitration Act our position is that if no policy existed, we next go to the question was our rescission righteous, which they denied or obviously disagreed with. If the rescission is righteous and correct, then indeed there was no agreement to arbitrate, and our position would be correct under the Uniform Arbitration Act. Only thing is there has to have been a rescission as opposed to the right to a rescission. And under Section 154, all we're required to do is send a letter or communicate the rescission. We are not required under Illinois law to file a DEC action. But are you required to refund the payments made? There are different requirements depending if the premium is finance. I realize counsel raised that in the motion, and it wasn't really part of the record below, and indeed they never raised it below in the motion. I can tell you as an officer of the court the premium was returned because I looked it up when counsel raised this in the motion. I know the exact date it was returned, and it was returned to the broker pursuant to the Premium Finance Act. So I can tell you that as an officer of the court, but it was never raised below, and counsel only raised it for the first time. I appreciate your candor. It's not on the record, but you're telling us as an officer of the court. I am telling you that, but I do want to emphasize they never raised that below. Right, so they've waived that argument. I believe they have. To follow up your question, though, a rescission in Illinois under Section 154 only requires a communication. Dear Mr. Insured, we're rescinding. There is absolutely no requirement that we file a DEC action. And I would note, and I noted this in contrast, when the legislature wants to make a specific manner of communication, such as cancellation for premium, they tell the insurance companies you must send it by certified mail, by form 3877. So that's just one example. There is no such requirement in Section 154. And contrary to my learned friend's argument, Section 154 is the sole method that we can rescind. It doesn't require a DEC action, but it requires us to prove the various elements of Section 154. And I would note in this case, to follow up also Justice Nicklaus' question, we rescinded on January 19th of 2011. Eight months later, they filed a request for arbitration. We kept a consistent position throughout. We communicated with AAA, the American Arbitration Association, and said there's no policy to arbitrate upon. We've rescinded the policy. Don't proceed. There is no requirement for us to do anything else. Now, because we're not required to file a declaratory, there wasn't any reason to do so at that point. When they filed the declaratory, we filed a counter complaint. And again, it was within the 90 days under the Arbitration Act. Right. When they sought to enforce the arbitration award. That's correct. And because of the timing in which they did so, we acted within the 81, well, well less than 90 days. So the scenario here of cases where people waive or are stopped does not apply. The carrier here took a consistent position. But let me move on to the. . . Did they participate in the arbitration? No, sir. They sent a letter saying that we're not going to participate and we're not going to proceed and there is no contract upon which to arbitrate. So we consistently took the same position before the AAA all the way through. I think the thing to go to next, or the idea that I think is important in this case, is the judge DeLoy looked at the issue of risk prospectively, like what has already happened. And he said in his opinion, or in his verbal opinion, that the thing that is the risk, the additional member of the household, it never actually happened. But that's not how insurance works. We charge for what may happen with known risks. So, for instance, we charge because you've had a lot of accidents or because you have a suspended license or whatever else it is. In the future, you may be a great driver. You may never have an accident. And, in fact, you may never make a claim, but you don't get your premium back. So, in other words, when he said below that the situation that you charged for wasn't material because it didn't happen, I think that's a backwards way to look at it. Risk is about what may happen and that we're allowed to charge for. And I'm just a little uncomfortable even getting to those issues because it seems to me all of that, because there's an agreement to be arbitrated. It has to be decided before the arbitration happens. And you may be right that you don't have a legal obligation to file a DEC action, but then anybody can say, well, I'm not going to arbitration. We don't have an agreement to arbitrate that. And then the arbitration happens without you. My answer to that is that the arbitrator cannot make that decision. So we are not waiving anything by the fact that the arbitrator says we're going to proceed based on an insurance capture. The arbitrator is not permitted under the Section 143A of the code to arbitrate coverage or make that decision. I think what you're saying is that even if we're not required to file a DEC action, when somebody fails an arbitration, shouldn't we go into court and seek a stay? The problem is that's not required. There's no case that says that. Is there a case that says it's not required? Is there a case that says it's not? The cases, yes, because the cases say that coverage can be estopped, but whether a contract exists is not subject to estoppel. So, indeed, I think those cases mean that. And I think it was Kourigis is one of the ones I cited that said the doctrine of estoppel is inapplicable to cases where there is no insurance policy in existence at the time of the loss. So, in other words, if there's no insurance policy in existence, we're not estopped. We're not required to do anything because if you look at it the opposite way, and I know I can't cite an unpublished case for this, but if you look at it the opposite way, if we were required to seek a stay, that would mean we're required to file a DEC action when it's uncontroverted and we're not required to do so under Section 154. So that just doesn't make sense. All we're required to do is communicate and take a consistent position, which Your Honor asked about, and we did take a consistent position. Now, I would note a footnote on this to answer your question more completely, and here's the hypothetical. What if we had rescinded the policy and had a policy defense? In other words, we rescinded, but we also had an exclusion. I acknowledge in that situation estoppel probably would apply. You've got to file the DEC action. And that's the same as a reservation of rights. Under State Farm v. Martin, to give you this analogy, it's not exact, but it's pretty close. Under State Farm v. Martin, if you don't do anything, you don't defend under a reservation or file a DEC, then it can be interpreted that you've waived a college defense, but not whether the policy exists. So the situation would be the same here. To the extent also to answer Justice Griffin's question, we're required to participate because we kept a consistent position, but it would be the same idea as defending under a reservation of rights at the arbitration. It's the same principle. We're not required to do that, especially because in this situation no policy existed. So we met the concerns of the Uniform Arbitration Act. We met the concerns of rescinding under Section 154. 154 has two bases, right? Made with actual intent to deceive. And that isn't at play here. You're not alleging that. No. So it materially affects either the acceptance of the risk or the hazard assumed by the company. And I heard what you said, perspective and all of that. But I'd just like you to explain a little bit more. So how is the risk? This was a 19-year-old, if I'm not mistaken, 19-year-old brother or something like that. And he didn't have a driver's license. And I remember some discussion about passengers and things. But that has nothing to do with anything, right? So if he was driving the car, you would just turn it down. You wouldn't have the exposure. Materiality comes, there are three examples to answer your question. The person could have come to us and said, I have a brother who lives in a house with an expired or suspended license. Our umbrella standards are we don't write for that person. We want to exclude him. He has to either be excluded or included. So the policy would be issued with him excluded at the same premium. Example two is he comes to us and says, I want to include him. You know, because he might drive in the future. There's a significant additional premium. And the third point, of course, is what she did do, which she admits in her felony judgment response, which is she just didn't put him on there. Now, your question is why is an additional family member an additional known risk? In a U.N., third party and liability policy, this covers everything. You are an additional risk to be a potential driver in the household, whether you have a license or not. You're an additional risk to be a passenger and an additional risk to be a pedestrian, all of which have U.N.-claimed components. So, in other words, every insurance policy, and I think we talked about this in the brief, from every carrier says, who is in your household? And the application asks you this. And so it is material to the risk-insured against. And in that recent direct auto case that came down, the court said, we aren't looking so much at the premium. We aren't looking so much at what actually happened. We're looking at what the potential risk is and is it rational to charge for that. It is uncontested, because there's no counter-affidavit, that our underwriting standards, you know, the underwriting manual, require you to list everybody in the household for that reason. And we don't accept the risk of somebody who has a suspended, expired license. I'm not sure about my time. Well, when you say it's uncontested, there was some contest about whether the affidavit was sufficient that was filed, right? Whether it was an underwriting manager or a claim manager? There was in the brief. I'm not sure that in the response to the summary judgment that's really what was raised. So I don't think below they really did raise that. They did not file a motion to strike the 213 disclosure of the $2,000 additional premium. They didn't object to its introduction. They didn't do a 191B. They didn't take the deposition of anybody involved, really. They sold it. You would agree that if we get to that issue, the burden would be on you to show as a matter of uncontested fact that it was material to the risk? Yes. If I – if you were to grant summary – if the judge below granted summary judgment in my favor, that would be yes. Right. If he granted summary judgment for them, it would be the opposite. However, if it is a contested issue of fact, then he shouldn't have granted summary judgment in either sense. Because now in the brief, which is, again, not really what was argued below, they're arguing with summary judge that these are factual disputes. I don't really think an uncontested affidavit is a factual dispute. But if, Your Honors, were to decide it was, then surely the judge below respectfully erred in granting summary judgment against us because they're now saying these are factual disputes. But, Justice Griffin, to answer you in a more comprehensive way, in the application, we ask these questions. How many cars are in the household? How many members of the household? Who has a suspended, revoked, or expired license? How far do you drive? These are all risk questions. And, you know, to give the example to follow your question that the judge below gave, what happens if a friend just happens to walk over that day and drive the car? He's not on the policy. He's an additional risk. And it's true, we can't – we can't wait for something we don't know about. But what we do rate, and what we are allowed to rate on, are the questions we ask for known potential risks. People in the household who have access to the vehicle, who are more likely to be using the vehicle as a passenger, driver, or pedestrian. The father is excluded already because he doesn't have a driver's license, right? Exactly. He would be excluded, but, Your Honor, under the Department of Insurance guidelines  because, remember, the policy only – the exclusion only applies to the named driver, not to the owner. So if he were involved in an accident as a driver, then the owner, i.e., the named insurer, would in fact be liable and we would owe coverage. So, indeed, there is a risk of that because the way the – if you look at that exclusion for the no license that counsel raised, it only applies to the driver. And, in fact, under the Department of Insurance guidelines, it's only allowed to apply to the driver. So, respectfully, I think my learned friend's example cuts the exact opposite way. There would be coverage. In addition, and again, to follow Justice Griffin's sort of analogy, he could be a passenger more frequently. He could be a pedestrian. However, if she had told the truth and listed him and excluded him, he'd be nothing. Passenger, no. Driver, no. Pedestrian, no. To conclude, in my last minute or so, we properly acted under Section 154. We properly acted under the Affirmative Arbitration Act. The reasoning given below, respectfully to the judge below, is incorrect because he said, but that person wasn't involved in the accident. What difference does it make? We don't give the premium back if you're not involved in an accident, but we have a right to charge for known risks. And we complied with the statute. Thank you very much. I ask to reserve a few moments for rebuttal. Certainly. Thank you, Mr. Schalles. Ms. Ellison, you may proceed. Thank you. May it please the Court? The arguments that counsel has made would be very interesting in a declaratory judgment action, but that's not what we're here for. As Justice McBurr pointed out, what we have here is an application to vacate an arbitration award. It's a different procedure, and the standards are different. The Illinois Uniform Arbitration Act governs how the case will proceed. It governs the grounds for vacating an arbitration. And if counsel wanted a trial, as he's arguing now should have occurred, then he should have filed a declaratory judgment action. The Arbitration Act calls for hearing these applications by motion, and that's what he had. Unfortunately for him, he didn't present sufficient evidence with his motion to prevail, and he doesn't get a second bite at the apple. He lost his motion. The Arbitration Act only provides for one motion, one application to vacate that same arbitration award. But if the policy were properly rescinded before the arbitration occurred, isn't he right that there is no agreement to arbitrate? There is no jurisdiction of the arbitrator, and that is a basis for vacating the award. If there had been a proper rescission, if it was gone, and is he right? Is he right? If it was gone, the policy was gone, all they'd do is send a letter to the insured. Well, I don't agree that all he has to do is send a letter to the insured. If it was gone, if it was properly rescinded, then there was no arbitration agreement. And that's a basis for vacating the arbitration award. So why do you disagree with him that it's gone? Well, first of all, I didn't prove that there was a rescission. And even now, as he says, well, I checked the premium was refunded. He says it was refunded to the broker. There's no evidence that it was ever refunded to the insured in this little. And why didn't he present it to the court alone? He didn't. It was his burden to prove that the case that the policy was, in fact, rescinded. He didn't do that. He didn't do that for multiple reasons. First of all, because he didn't show that the premium was rescinded. Secondly, he didn't show that there was a misrepresentation. He equates member of the household with resident. It's not necessarily the same thing. There is ample evidence to show that Mr. Chester, in fact, had his residence elsewhere, even if he sometimes stayed with his sister. Their own investigator, Mr. Pollack, said, well, this Chicago address is probably his home where he lives with his parents. He probably goes to school at Northern Illinois. And there's ample case law that says, well, a student going to college away from his parents is still a resident of his parents' home. So you're taking issue with the materiality of whatever was or wasn't represented correctly? I'm taking issue with whether or not there was a misrepresentation. I'm also taking issue with the materiality. As I pointed out, under their own policy, the reasonable belief exclusion would exclude coverage for Mr. Chester because he is unlicensed. Counsel argues that, well, there is an additional risk because he was probably a frequent passenger if he lived in the same household. I think their own application belies that argument, though, because the application only asked for the names of residents 15 years and older. What about residents under 15? Aren't they just as likely or more likely to be passengers? The company didn't care about them, so obviously it's not material to the risk. Do you agree with his premise that you don't need to file a DAC action, you don't need to file anything prior to the arbitration, you being the insurance company, in order to come in after the arbitration award and say there was a rescission? I don't agree with it, but I can see that it's not clear under the law. The Arbitration Act says that you can vacate the arbitration award if there's no arbitration agreement, as long as you don't participate in the arbitration without objecting. So that seems to say you can vacate it afterwards without doing the DAC action beforehand. On the other hand, there's case laws saying that it's better to do it beforehand, or there's some case laws saying that the issue of whether or not there is an arbitration agreement should be decided before the arbitration. I mean, it makes sense that it should be. The notion that the company can unilaterally say, yeah, we don't think we had a good contract with you, so we're not going to participate. I mean, they could do that all the time and then take their chances. Maybe they'll win the arbitration, maybe you won't show up for the arbitration. I mean, it just seems a little after the fact. An American Heartland seems to be trying to shift the burden to the claimants here to disprove material misrepresentation. It's not the burden of the claimants to disprove it. It's the burden of the insurance company to prove that there was a material misrepresentation, allowing them to rescind the policy. In this case, they waited more than two years before doing anything about this. The accident was in 2010. The case, I think, was arbitrated in the arbitration war was more than two years later in 2013. And then it wasn't until 2013 that after the claimants moved to a petition to confirm the award that American Heartland finally did something and said, well, we're going to file a petition or application to vacate this award. Well, American Heartland chose its remedy and it stuck with the procedure that it chose. It doesn't get a full-blown trial on a declaratory judgment action because it chose not to do that. The Arbitration Act provides that these applications to vacate an arbitration award shall be heard and determined as a motion in a civil case. And that's what they got. And they lost that because they didn't present sufficient evidence that they had the rights to rescind and that they actually did rescind this contract. So we shouldn't look at it the same way we'd look at it as cross motions on a deck action is your point. If there was an issue of fact left on materiality, that's on them. They did not provide what they needed to provide the court on a motion to vacate. Exactly. And that's Section 15 of the Arbitration Act says that it's to be heard as a motion. And then the other provisions of the Arbitration Act, Section 12D says that if the application to vacate the arbitration award is denied, then the court shall confirm the arbitration award. And that's what the court did here. And then Section 14 says if there's an order to confirm the arbitration award, then judgment shall be entered on the award. And that's what the court did here. In effect, after denying the petition to vacate the arbitration award, the judge confirmed the award and wrapped it up by saying, okay, all these other claims are dismissed, resolved. Those became a necessary or moot then. They're not entirely the full trial that they're asking for now. They had their opportunity. They had one motion, and they simply failed to present sufficient evidence. The judge properly ruled that he wasn't going to vacate this arbitration award, so then he had no choice but to confirm the award and enter judgment on it. If there are no further questions, I would ask that you perform the judgment of the trial court. Thank you. Thank you, Ms. Millicent. Mr. Schultz? Very briefly. Well, you don't have to be brief, but don't be boring. All right, I won't be boring today. What actually happened was there was a motion for summary judgment and then another motion for summary judgment. So when my friend talks about that's not the procedure, well, that's not what happened. I filed a motion for summary judgment. I lost. They filed a motion for summary judgment later on, and they won. So it was decided as a matter of summary judgment. That's what the judge decided. And he decided that in his decision that we couldn't rescind for the reasons he gave, and therefore the policy existed, and therefore we can't vacate the arbitration award. So Justice McFarland, he did it the exact opposite way, and he reasoned through it, although I disagree with his conclusion. He reasoned through it in the way that I'm suggesting that you reason through it. Did we have a proper contract of insurance or not? If we did and were wrong on rescission, then, indeed, he confirmed the arbitration award. But if we didn't, then the question is, is the rescission righteous? He decided it wasn't, and, indeed, he reasoned through the exact same way I did, and I think that's the proper methodology, although I don't agree with the conclusion. Secondly, counsel raised again the issue of residency and whether there's a question of fact. They filed a motion for summary judgment and won, arguing there is no question of fact. So that doesn't make any sense. And I also want to note, in answer to Justice Griffin's question, in their response to the motion for summary judgment in their brief below on page C213 of the record, they admit Little omitted Eric in the application to American Heartland, but she did so inadvertently. They don't deny that he was a resident at a hospital. We have statements signed by Little indicating he lived there and was a resident at a hospital. He was deposed. He admitted he was a resident at a household. And when you read their response brief in the summary judgment, they've admitted that, and they found no counter-affidavit to mine or my client's in the case. They made no objection. So that's not what the record says. In terms of the one year, I just want to clarify, there's a United Auto case that I cited from Judge Pantel that I happened to win in the appellate court that, well, Judge Pantel agreed with us, that the one year is the hour limit. In other words, you're not guilty of ledges unless you rescind one year and one day. But if you rescind one day before the one year, it's perfectly legitimate. There is nothing in that case that says anything that we're required to file a declaratory and can't do so by letter. And, again, I don't know if I'm allowed to say this, but there is an unpublished by Justice Epstein that agrees with me on that 100%. You're talking about the 23? Yes, I can't talk about that. That's right. I apologize. You cannot be cited. I apologize. But I know justices, if they heard you say that, they'd tear up your brief. Well, I hope you won't do that. So let me talk about the reasoning behind it. The reasoning behind it is that Section 154 was particularly written to not include those other requirements. This is a non-common law issue. It is a statutory issue. And I understand that there are situations where a judge looks at this and says, I don't like the idea that you can rescind post-accident. Well, the legislature not only lets us, but has loosened the requirements of Section 154. In other words, when given the public policy option, there have been three amendments to Section 154 over the last 20 years that I've been a lawyer. All three have loosened the requirements and made them less restrictive. So the legislative policy is we are allowed to do so within the year. And there is no requirement, no case law ever cited, because there isn't any, that says we must file a deck or we've waived. We can just – are we – you can just decide on your own this is not a good contract and we're going to pretend it doesn't exist. That's what you're saying. No. And here's why. Your Honor, if we do that, and we're wrong and have no good faith basis, they can file a Section 155 and have a darn good case for it. So you do have a remedy if you're insured. But you've denied the 155 in this case even though you decided you were wrong. Because we have a good faith basis. But I'm talking about the situation you're talking about. What if the carrier for no reason just to harass an insurer, sends a 154 letter, rescinds the policy and has no good faith basis? Well, the insurer does have a remedy for that. Not only the damages, not only the Section 155 for attorney's fees and $60,000. I understand. So I think it's important to answer your question that that is the point, that the legislature gave a remedy for that. But there is simply no case that says we are required to go to court to file a Section 155. To stay in the arbitration. Well, there's simply no case, and counsel has said it won't, because she's acknowledged to you in your answer to your direct question, there is no such case. So respectfully, why should we held to that standard when there is no such standard? Lastly, just a moment about the premium. I find the argument odd because while we were sitting here and I was listening to my learned friend, I was rereading their response to the summary judgment. This was never raised anywhere until their brief. I'm not even sure that in a premium finance case there is a requirement. I am telling you as an officer of the court it was returned to the person who premium financed it. In other words, in Illinois, as you all know, premiums are usually financed by a broker. So that person loans the money to the insured. The money was returned. And again, I can tell you that as an officer of the court. But I just want to emphasize, I'm not certain there's any case that says that's even a requirement under Section 154, much less that it should be considered waived. This was never argued by the trial counsel below. So again, I would, following Justice Bickford's question, just conclude by saying this. Although I disagree with the conclusion below, the reasoning or methodology of thinking it through was the correct one. You're here to vacate an arbitration award. Are you here within 90 days? Yes. What is the reason? Is it a reason under the Universal Arbitration Act? Yes. What is the reason? It's that there was no agreement to arbitrate. Next. Why was there no agreement to arbitrate? Because we properly rescinded. Next. Did we properly rescind under Section 154? Because a known risk was not given. There's zero dispute that the application's inaccurate, because they admit that in their briefs in response to summary judgment. They admit there's an omission. So the question to follow Justice Griffin is, was that omission material? The reasoning given by the judge below of why it wasn't material, in my view, reverses the order of insurance. The fact is, if you have 5 or 10 or 15 people driving, it matters. If you have 5 or 10 or 15 people in the household, it matters. We work based on people with suspended licenses or expired licenses, and we did so here. And we would charge additional premium for that, because those people are an additional risk. That they weren't actually in an accident, I cite the heart attack case. And the heart attack case is a famous case where the person goes to buy life insurance and says, I have cancer, but doesn't disclose he has a heart condition. He then has a heart attack and dies. And, of course, they come in and say, well, he didn't die of what he didn't disclose, but that isn't what matters. They reason on what is a known risk, and she failed to disclose a known risk. For those reasons, we respectfully move that you reverse and remand either for a new trial, because there's a question of fact, as counsel, I think, sort of argued, or our hope is that you grant and reverse for summary judgment and find no coverage. Thank you for the opportunity to speak to you today. Thank you, Mr. Shellis. Ms. Ellison, thank both of you for a very fine oral argument. I'm sure we will find it helpful in reaching our decision.